IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 11, 2022 Session

## VATISHA EVANS-BARKEN v. MADISON COUNTY TENNESSEE

**Appeal from the Chancery Court for Madison County**
No. 76475     James F. Butler, Chancellor

_____

### No. W2020-01101-COA-R3-CV

_____

Appellee, a Sergeant with the Madison County Sheriff's Department, sought judicial review of the Civil Service Board's affirmance of the Sheriff Department's decision to terminate her employment. On its finding that the Board failed to consider all relevant evidence presented, the trial court exercised its discretion to remand the case to the Board for rehearing. Tenn. Code Ann. § 4-5-322(h). Appellant, Madison County, Tennessee, filed the instant appeal. We conclude that the trial court's remand order is not a final, appealable order under Tennessee Rule of Appellate Procedure 3(a). As such, this Court does not have subject matter jurisdiction over the appeal. Appeal dismissed.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and THOMAS R. FRIERSON, J., joined.

James I. Pentecost, Nathan D. Tilly, and Jay G. Bush, Jackson, Tennessee, for the appellant, Madison County, Tennessee.

Brad W. Hornsby and Michael S. Hibdon, Murfreesboro, Tennessee, for the appellee, Vatisha Evans-Barken.

## I. Background

In or around October 2007, Appellee Vatisha Evans-Barken was hired by the Madison County Sheriff's Department (the "Department"). During her tenure with the Department, Appellee attained the rank of Sergeant and was certified in accordance with the Peace Officer's Standards Training ("POST") criteria. Tenn. Code Ann. § 38-8-106.

In or around April 2014, Appellee went on medical leave. After exhausting her vacation days and earned time off, she requested additional leave under the Family Medical Leave Act ("FMLA"). On September 2, 2014, the Department terminated Appellee's employment on the ground that she had exhausted her FMLA leave and had not provided a doctor's opinion that she could not return to work. Appellee appealed to the Civil Service Board (the "Board"), which overturned the Department's decision on March 30, 2015. The Board found that, on July 15, 2014, Appellee requested an extension of her FMLA leave to October 1, 2014, but she did not receive notice of Appellant Madison County, Tennessee's decision to deny the extension. The Department appealed the Board's decision to the Madison County Chancery Court ("trial court"), which affirmed the Board's decision by order of February 23, 2016. Thereafter, in March 2016, Appellee was reinstated.

Although Appellee was reinstated, because she had not worked as a full-time law enforcement officer for more than six-months, she was required to undergo a psychological evaluation under POST, Tenn. Code Ann. § 38-8-106(9). POST requires a full-time police officer to

> [h]ave been certified by a Tennessee licensed health care provider qualified in the psychiatric or psychological field as being free from any impairment, as set forth in the current edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM) of the American Psychiatric Association at the time of the examination, that would, in the professional judgment of the examiner, affect the applicant's ability to perform an essential function of the job, with or without a reasonable accommodation.

---

[1] Rule 10 of the Rules of the Court of Appeals provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Code Ann. § 38-8-106(9).

On March 30, 2016, Dr. Emily Davis, Ed.D., a Licensed Senior Psychological Examiner, performed the required tests, which included both the MMPI-2 and the Matrix-Predictive Uniform Law Enforcement Selection Evaluation Inventory ("M-Pulse"). Dr. Davis also interviewed Appellee for approximately fifteen-minutes. Dr. Davis reported that Appellee's

> response profiles on the MMPI-2's clinical and content scales did not indicate any psychopathology. However, her responses and response profiles on the [M-Pulse] (which predicts a potential law enforcement candidate's success in law enforcement work) indicated some areas of significant concern about her potential as a successful law enforcement employee. The areas of concern, based on her own responses to the M-Pulse Empirical scales, and the California POST Competencies scales do suggest, in this examiner's opinion, that Ms. Evans-Bark[e]n's ability to competently perform the essential functions of a law enforcement career is questionable, and that her work performance would be unsatisfactory to the [D]epartment if she were employed in a law enforcement capacity.

As set out in the trial court's July 29, 2020 order, Dr. Davis' opinion was based on the following:

> [Appellee's] results on the M-Pulse testing were elevated in some areas. On intake paperwork, [Appellee] had indicated she had depression. Dr. Davis talked to [Appellee] about this disclosure and found that [Appellee] had been in counseling in the two years before the test for six months each year, but was not in counseling in 2016 when the testing was done. Dr. Davis conducted an interview with [Appellee] which lasted ten to fifteen minutes. Thereafter, Dr. Davis generated the report stating [Appellee] was not qualified to be rehired. Her basis for that conclusion was [Appellee's] alleged statements in her prior sworn testimony at her initial hearing before the [Board] in 2014 relative to her alleged PTSD. [Appellee] did not indicate any problems with PTSD on the paperwork filled out prior to the testing, and Dr. Davis did not ask her about it. Dr. Davis also stated [Appellee] did not pass the M-Pulse test in her opinion. It was later argued that [Appellee] did not state she had PTSD at the previous hearing, but that it was a statement made by her counsel.

Based on Dr. Davis' report and opinion that Appellee was not qualified for POST certification under Tennessee Code Annotated section 38-8-106(9), the Department terminated Appellee's employment effective April 5, 2016. As set out in the trial court's order, Appellee "was disqualified because of a 'diagnosis' of PTSD as shown on Exhibit 6

dated July 15, 2014 under the 'Assessment' section." Exhibit 6 appears to be a physician's record from Dr. John Michael Briley. The parties dispute whether Dr. Davis relied on Dr. Briley's record in forming her opinion that Appellee suffered from PTSD.

Appellee appealed the Department's decision to the Board, which conducted a hearing on April 20, 2017. The Board heard testimony from Sheriff John Mehr and Dr. Davis. As noted by the trial court, during her testimony, Dr. Davis

> conceded that she was not qualified to make a diagnosis of PTSD and the end result of the PTSD discussion between [Dr.] Davis and [Appellee's] counsel was that all of the testing done by Dr. Davis showed [Appellee] was qualified and that she was relying on a statement made by [Appellee's] counsel at the 2014 initial hearing before the Board.

The Board also heard testimony from Appellee's expert psychologists, Megan L. Avery, Ph.D., and Neil E. Aronov, Ph.D. Both Dr. Avery and Dr. Aronov disputed Dr. Davis' methods, qualifications, and expertise. Dr. Avery testified that she performed a fitness-for-duty evaluation of Appellee on October 5, 2016. Based on that evaluation, Dr. Avery opined that Appellee did not have a psychiatric problem and exhibited "no symptoms impairing her ability to perform her job." Dr. Aronov testified that Dr. Davis' evaluation techniques deviated significantly from accepted methodology and that the brief interview Dr. Davis had with Appellee was insufficient to form a valid opinion as to Appellee's fitness for duty. Dr. Aronov further testified that the evidence Dr. Davis provided to him for review excluded a test that Dr. Davis performed but omitted from her report. Dr. Aronov explained that his review of the missing test caused him no concern regarding Appellee's fitness for duty, but he testified that the standard practice is to disclose all parts of an evaluation regardless of whether the information supported the examiner's conclusion or was considered by the examiner in reaching his or her conclusion.

By order of January 26, 2018, the Board affirmed the Department's termination of Appellee's employment. The Board's opinion stated, in relevant part that:

> Neither Dr. Davis' qualifications, the evaluation of the [Appellee] which she performed, nor the manner in which she performed it are at issue before this Board. Our sole task is determining whether the [Appellee's] termination by Sheriff Mehr was one of "just cause". Our task is not, however, with the benefit of information available to Sheriff Mehr at the time of the termination, to critique his decision as if he were privy to such. There was no evidence introduced which showed that either prior to or at the time of the termination, that Sheriff Mehr had any reason whatsoever to question Dr. Davis' credentials or her work . . . .

On March 22, 2018, Appellee filed a Petition for Judicial Review in the trial court under the Uniform Administrative Procedures Act ("UAPA"). Tenn. Code Ann. § 4-5-101, *et seq.* Appellee sought reversal of the ruling of the Board upholding the Department's termination of her employment and raised the following issues for the trial court's consideration: (1) whether the decision made by the Board violated a statutory or constitutional provision; (2) whether the decision made by the Board was made in excess of the agency's authority; (3) whether the decision made by the Board was arbitrary and/or capricious and unsupported by substantial and material evidence; and (4) whether Appellee is entitled to back pay and her attorney's fees. A writ of certiorari was issued to the Board for all records of the proceeding before the Board, and these records were transmitted to the trial court for review. By order of July 29, 2020, the trial court found, in relevant part:

> [T]he Court is aware, from the opinion of the Civil Service Board, dated January 26, 2018, that the Board considered none of the testimony of Dr. Avery and Dr. Aronov, or the evidence they produced.

> ***

> [T]he Board found the Sheriff had "just cause" to terminate [Appellee], based solely on the knowledge the Sheriff had at the time of his decision to terminate. The Board further opined that since the Sheriff did not have the information that the Board had which was produced at the hearing, that the Board would not view the Sheriff's decision as if he had the information that the Board had. The Board seemed to misinterpret its role. The Board is not a reviewing agency. The Board hears the matter de novo. The Board allows the evidence to be developed and introduced at the hearing. The Board is in fact the "Trial Court". The Sheriff's actions in discharging or demoting a person shall be subject to the approval or disapproval of the Board. If the Board approves the discharge or demotion of an employee, the decision may be appealed to the court having appropriate jurisdiction. The . . . Act contemplates, by its very wording, that the Board, after hearing the evidence, shall substitute its judgment for that of the Sheriff by either approving or disapproving the action of the Sheriff.

> ***

> The process providing for a hearing before the Civil Service Board is a due process hearing where both sides present evidence and the case is heard de novo, and both sides present their position. The Board decides if the employee should be discharged. If the Board only had the authority to decide if the Sheriff had "just cause" to discharge or demote, based on the Sheriff's assessment of the facts, there would be no point in hearing the discharged employee's evidence.

- 5 -

In the instant case, the Board's decision to determine "just cause" based solely on what information the Sheriff had at the time of his unilateral decision renders that decision to be in violation of the constitutional right of due process. The essential requirements of due process are notice, and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why the proposed action should not be taken is a fundamental due process requirement.

For the Board to include the information the Sheriff had at the time of termination, but to exclude other evidence presented before the Board (which the Sheriff did not have at the time of termination) violates the Board's mandate to hear the matter de novo and consider not only the Sheriff's side, but the [Appellee's] side as well. To exclude the evidence presented by the [Appellee] in its decision making role renders the Board's decision arbitrary or capricious and unsupported by evidence that is both substantial and material in light of the entire record, and shows that the Board's decision was made upon unlawful procedure.

Based on the foregoing findings, the trial court disposed of the petition as follows:

This Court finds that the record of the Board in this case is fully developed and that a reversal is not appropriate, which would require a new hearing. It is appropriate to have the Board review and consider all of the evidence introduced at the hearing and enter a ruling that reflects a consideration of the entire record.

The case is hereby remanded to the Civil Service Board for Madison County, Tennessee for further proceedings in light of this ruling.

Madison County appeals.

## II. Analysis

Madison County raises four issues for review. However, before reaching the issues, this Court must first address the question of subject matter jurisdiction. Tenn. R. App. P. 13(b) (directing the appellate court to consider "whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review"). "Subject matter jurisdiction refers to a court's authority to adjudicate a particular case or controversy and 'depends on the nature of the cause of action and the relief sought.'" *In re Baby*, 447 S.W.3d 807, 837 (Tenn. 2014) (quoting *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 712 (Tenn. 2012)). Subject matter jurisdiction cannot be waived, *id.*, and "whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Tenn. R. Civ. P. 12.08.

Under the UAPA, parties aggrieved by the final decision in a contested administrative matter are entitled to judicial review. Tenn. Code Ann. § 4-5-322(a)(1). Additionally, "[a] preliminary, procedural or intermediate decision is immediately reviewable if review of the final agency decision would not provide an adequate remedy." *Id*. Judicial review of an administrative decision concerning employment decisions by city or county civil service boards is instituted by filing a petition for review in chancery court. Tenn. Code Ann. § 4-5-322(b)(1)(A); Tenn. Code Ann. § 27-9-114(b)(2) (stating that "decisions by a city or county civil service board affecting the employment status of a civil service employee" are to be filed in the chancery court of the county where the civil service board was located). Review of a "final judgment of the chancery court" may then be appealed to the Tennessee Court of Appeals. Tenn. Code Ann. § 4-5-323(a); *see also* Tenn. R. App. P. 3(a) ("In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right.").

"[A]ny order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable[.]" Tenn. R. App. P. 3(a). "A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'" *In re Estate of Henderson*, 121 S.W.3d 643, at 645 (Tenn. 2003) (citation omitted). In the context of administrative proceedings, this Court has recently explained that

> [a] final judgment of an administrative matter by a chancery court occurs when all issues before the chancery court are conclusively determined by the court and leave no other issues for the chancery court to decide. *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 460 (Tenn. 1995). "The judicial review of the agency decision [is] not a continuation of the agency proceeding, but [is] an original judicial review proceeding under Section 4-5-323 subject to review by the appellate courts." *Id*. (footnote omitted). A full evidentiary hearing by the Chancery Court is not necessary for the court to enter a final order addressing the only issues before it. *City of Memphis v. Lesley*, No. W2012-01962-COA-R3-CV, 2013 WL 5532732, at *9 (Tenn. Ct. App. Oct. 27, 2013). When an order makes clear that the trial court left issues unadjudicated, appeal to the appellate court is premature, even where issues are not expressly reserved by the trial court. *See Wilson v. City of Memphis*, No. W2014-01822-COA-R3-CV, 2015 WL 4198769 at *6 (Tenn. Ct. App. July 13, 2015).

*Mosley v. City of Memphis*, No. W2019-00199-COA-R3-CV, 2019 WL 6216288, at *4 (Tenn. Ct. App. Nov. 21, 2019). The instant case is similar to the *Wilson* case cited in *Mosley*. In *Wilson*, an equipment operator for the City of Memphis sought judicial review of the Civil Service Commission's decision that there was just cause to terminate her employment. *Wilson*, 2019 WL 6216288, at *2. By order of May 14, 2013, "the trial court remanded the matter back to the Commission to clarify whether its decision was based

upon the Memorandum of Understanding, which the trial court ruled was non-binding, or the City's Personnel Manual, which the trial court ruled was an appropriate basis for discipline." *Id.* at *3. On remand, the Commission entered a supplemental order; however, the trial court was not satisfied with the Commission's supplemental order, as it "failed to show an objective review of the record" and "failed to comply with the City's Charter." *Id.* Accordingly, by order of December 18, 2013, the trial court again remanded the matter back to the Commission. *Id.*

The *Wilson* Court held that neither of the trial court's orders of remand were final, to-wit:

> In this case, the May 14, 2013 order is clearly not final. First, the trial court undoubtedly intends to retain jurisdiction, evidenced by the fact that it gives the Commission a specific time frame for carrying out the trial court's directives. More importantly, the May 14, 2013 order **does not resolve all the claims of the parties and cannot constitute a final judgment from which an appeal will lie**. *See* Tenn. R. App. P. 3(a). Instead, **the order was interlocutory in nature, and other proceedings and orders were required to create a final judgment**.
>
> Although the December 18, 2013 order does not contain as clear an indication of the trial court's intent to reserve certain issues for later consideration, we likewise conclude that it did not constitute a final judgment. First, much like with the May 14, 2013 order, the trial court clearly directs the Commission to respond to its ruling within a specific timeframe. Furthermore, **this order simply cannot constitute a final order on Ms. Wilson's petition for a writ of certiorari because it fails to rule on her requested relief, an award of reinstatement with full back pay and benefits, as well as attorney's fees. Without ruling on Ms. Wilson's request, the trial court had not yet ruled on "all the claims, rights, and liabilities of all the parties."** *See* Tenn. R. App. P. 3(a). Instead, the trial court's ruling was not final until the trial court entered two additional orders: the August 11, 2014 order awarding Ms. Wilson reinstatement, back pay, and benefits; and the November 20, 2014 order denying Ms. Wilson's request for attorney's fees and other pending requests for relief.

*Wilson*, 2019 WL 6216288, at *6 (emphases added). The same is true here. As set out in context above, the trial court concluded that the Board failed to consider all of the evidence presented at its hearing and specifically failed to consider the evidence and testimony from Dr. Aronov and Dr. Avery. As such, the trial court exercised its authority under Tennessee Code Annotated section 4-5-322(h) and "remanded the case [to the Board] for further proceedings," i.e., consideration of the full record before it. Importantly, the trial court did not reverse, affirm, or modify any of the Board's substantive decisions. In other words, the trial court did not "rule on [Appellee's] requested relief, an award of reinstatement with

full back pay and benefits, as well as attorney's fees." ***Id.*** Although, in ***Wilson***, the Court ultimately took jurisdiction over the appeal, it was not "until the trial court entered two additional orders: the August 11, 2014 order awarding Ms. Wilson reinstatement, back pay, and benefits; and the November 20, 2014 order denying Ms. Wilson's request for attorney's fees and other pending requests for relief." ***Id***. Such rulings have not been made by the trial court in the instant case. In the absence of a final order in the trial court, this Court does not have subject matter jurisdiction over the appeal. Tenn. R. App. P. 3(a).

### III. Conclusion

For the foregoing reasons, the appeal is dismissed. Costs of the appeal are assessed to the Appellant, Madison County, Tennessee, for all of which execution may issue if necessary.

_____s/ Kenny Armstrong_____
KENNY ARMSTRONG, JUDGE
